1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK EARL RUMMERFIELD, | Case No.  1:22-cv-01571-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT; |
| v. | DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF |
| COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF JACK EARL RUMMERFIELD AND TO |
| Defendant. | CLOSE THIS ACTION |
| | (ECF Nos. 25, 27) |

## I.

## INTRODUCTION

Jack Earl Rummerfield ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the ALJ erred by failing to provide clear and convincing reasons to reject his

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 6, 10, 11.)

psychiatric symptomology, the mental residual functional capacity ("RFC") assessment is not supported by substantial evidence, and the ALJ erred by failing to identify and resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert ("VE") testimony.

For the reasons explained herein, Plaintiff's amended motion for summary judgment shall be denied.

## II.

## BACKGROUND

### A.     Procedural History

Plaintiff protectively filed an application for supplemental security income on November 21, 2019.  (AR 83.)  Plaintiff's applications were initially denied on September 1, 2020, and denied upon reconsideration on February 25, 2021.  (AR 109-13, 123-27.)  Plaintiff requested and received a hearing before Administrative Law Judge Trina Mengesha-Brown ("the ALJ").  Plaintiff appeared for a telephonic hearing on November 10, 2021.  (AR 40-60.)  On December 17, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 18-34.)  On September 29, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)

### B.     The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, December 17, 2021:

1.  Plaintiff has not engaged in substantial gainful activity since November 21, 2019, the application date.

2.  Plaintiff has the following severe impairments: right elbow degenerative joint disease status-post right elbow ORIF, schizophrenia spectrum disorder, anxiety disorder, asthma, and left renal mass.

3.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4.  After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR § 416.967(b) with the following additional limitations: frequent climbing ramps and stairs; no

climbing ladders, ropes, or scaffolds; frequent stooping, kneeling, and crouching; no crawling; frequent reaching in all directions with the right upper extremity; occasional pushing and pulling a maximum of 10 pounds with the right upper extremity; the avoidance of workplace hazards and moving machinery; the avoidance of no more than moderate exposure to heat, cold, and pulmonary irritants; simple, routine tasks not at a production pace; occasional interactions with supervisors and co-workers; no interactions with the general public; and occasional changes to a routine work setting.

5. Plaintiff has no past relevant work.

6. Plaintiff was born on May 11, 1984, and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. Plaintiff has at least a high school education.

8. Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since November 21, 2019, the date the application was filed.

(AR 23-33.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are

---

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only supplemental security income in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

not severe.   20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]   A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.   See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."   Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.   20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.   See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).   "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "   Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).   In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).   "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

As stated above, Plaintiff raises three issues in the instant appeal of the denial of his application for supplemental security income: (1) the ALJ erred by failing to provide clear and convincing reasons to reject his psychiatric symptomology; (2) the mental residual functional capacity assessment is not supported by substantial evidence; and (3) the ALJ erred by failing to identify and resolve an apparent conflict between the DOT and VE testimony.

///

**A.      Whether the ALJ Erred in Considering Plaintiff's Testimony**

Plaintiff first argues that the ALJ erred by failing to provide clear and convincing reasons to reject his symptomatic evidence.  (Pl.'s Amended Motion for Summary Judgment ("MSJ") 9,[5] ECF No. 25.)  Plaintiff argues that the reasons the ALJ provided for rejecting his symptom testimony are not clear and convincing because they are based on misrepresentations of his treatment as conservative, medical findings that he was stable post hospitalization, and activities of daily living indicating the ability to sustain workplace functioning.  (MSJ 10.)  Plaintiff contends that his treatment was not conservative as he was prescribed increasing dosages of antipsychotic medication, was hospitalized for a year prior to the period at issue, and the ALJ failed to explain what more aggressive or non-conservative treatment was available and not followed.  (MSJ 11.)

Plaintiff also assets that the ALJ erred by failing to discuss the well documented significant side effects of the medication that he was taking.  (MSJ 12.)  Plaintiff alleges that the ALJ cherry picked what she deemed to be normal and stable medical findings and fails to explain the significance of those findings.  (MSJ 13.)  Further, Plaintiff argues that the ALJ erred by dismissing his one-year hospitalization due to his mental issues as being prior to the period at issue because longitudinal evidence is relevant to his overall degree of functional limitation.  (MSJ 14-7.)  Finally, Plaintiff asserts that the ALJ mischaracterized the evidence of his daily activities, and this cannot support the ALJ's finding that his symptom testimony was inconsistent with his daily activities. (MSJ 18-20.)

Defendant counters that the ALJ complied with the regulations by providing multiple valid reasons that are supported by substantial evidence to discount Plaintiff's symptom testimony.  (Def.'s Amended Responsive Brief ("Opp.") 17, ECF No. 27.)  Defendant contends that the ALJ indicated that she considered the objective medical findings in the record and found that they did not fully corroborate Plaintiff's allegations.  (Opp. 18.)  The ALJ considered that the consultative examination noted that Plaintiff had some difficulties with tasks but otherwise was generally normal and that treatment notes also noted generally normal findings.  (Opp. 18-9.)  Defendant argues that

---

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1   Plaintiff's argument that the ALJ cherrypicked findings and failed to explain their significance is

2   meritless as the relevance of the findings is evident.  (Opp. 19.)  Further, Defendant asserts that the

3   ALJ did not mischaracterize the mental status examinations and Plaintiff's support for this assertion

4   consists of irrelevant argument such as that some of the examinations were not full mental status

5   examinations and, sometimes, he was seeking treatment for physical, rather than mental, symptoms.

6   (Opp. 19-20.)   However, Plaintiff does not describe how these objections undermine the actual

7   findings upon which the ALJ relied.  Defendant asserts that the ALJ properly found that the

8   objective medical evidence does not fully support Plaintiff's alleged mental symptoms.  (Opp. 20.)

9        Defendant also argues that the ALJ considered that Plaintiff had been psychiatrically

10  hospitalized for about a year just prior to the relevant period but noted that during the relevant

11  period the treatment had been conservative and limited since he had been released.  Defendant

12  contends that the ALJ considered treatment notes indicating that he was doing well, was compliant

13  with treatment and noted that there had been no further decompensations or inpatient admissions.

14  Defendant asserts that the ALJ did not fault Plaintiff for not seeking more aggressive treatment as

15  Plaintiff argues but noted that his symptoms did not require more aggressive treatment.  (Opp. 20.)

16  Further, Defendant asserts that Plaintiff's extension discussion of his year long hospitalization in

17  2018-19 does not undermine that ALJ's analysis as court's recognize that symptoms fluctuate over

18  time.  (Opp. 21.)  Defendant contends that the ALJ properly considered the evidence from the

19  relevant time period in coming to her decision.  (Opp. 22.)

20       Defendant argues that the ALJ's decision which limited Plaintiff to simple tasks, no

21  production rate pace, limited social contact, and occasional changes shows that the ALJ agreed that

22  Plaintiff still had symptoms despite his medication use.  Defendant agrees that the ALJ did not

23  expressly discuss that Plaintiff reported side effects of a clicking sound while on Thorazine, but

24  there was no prejudice as Plaintiff was changed to a generic and there are no further reports that the

25  side effect continued, nor does Plaintiff explain how the clicking sound would require limitations

26  on his ability to work.  (Opp. 22.)

27       Defendant asserts that Plaintiff's daily activities were properly cited to demonstrate his

28  inconsistent symptom allegations to the extent they contradict his claim of total debilitating

1    impairment.    (Opp. 23.)    Further, Defendant contends that Plaintiff's allegation that the ALJ
2    mischaracterized his function reports is meritless and the ALJ properly considered his daily
3    activities as one factor in discounting his allegations.  (Opp. 23-24.)

4         1.    Legal Standard

5         A claimant's statements of pain or other symptoms are not conclusive evidence of a
6    physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn,
7    495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other
8    non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether
9    a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin,
10   759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant
11   must produce objective medical evidence of an impairment that could reasonably be expected to
12   produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80
13   F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering,
14   "the ALJ may reject the claimant's testimony about the severity of those symptoms only by
15   providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266,
16   1277 (9th Cir. 2020) (citations omitted).

17        If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other
18   limitations is unreliable, the ALJ must make a credibility determination citing the reasons why
19   the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and
20   what testimony undermines the claimant's complaints.  In this regard, questions of credibility and
21   resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue,
22   574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

23        In addition to the medical evidence, factors an ALJ may consider include the location,
24   duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms;
25   the type, dosage, effectiveness or side effects of any medication; other measures or treatment used
26   for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily
27   activities, work record, or an unexplained failure to pursue or follow treatment—as well as
28   ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal

1   contradictions in the claimant's statements and testimony, and other testimony by the claimant

2   that appears less than candid.   See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

3   Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1040;

4   Smolen, 80 F.3d at 1284.   Thus, the ALJ must examine the record as a whole, including objective

5   medical evidence; the claimant's representations of the intensity, persistence and limiting effects

6   of his symptoms; statements and other information from medical providers and other third parties;

7   and any other relevant evidence included in the individual's administrative record.   SSR 16-3p,

8   at *5.

9           2.       Plaintiff's Relevant Testimony

10                   a.        **March 2, 2020 Adult Function Report**

11           Plaintiff completed an adult function report on March 2, 2020.   (AR 292-99.)   Plaintiff's

12   ability to work is limited by his illnesses because he cannot stay focused and is restless.   (AR

13   292.)   On a normal day he will get up, eat, and stay outside most of the day and then comes in to

14   take a nap.   His conditions cause him to not be able to sleep.   He does not like to change his

15   clothes regularly and only bathes two times a week.   He has long hair and washes it when he

16   showers. He does not shave. Plaintiff is able to feed himself. (AR 293.) Plaintiff needs reminders

17   for his personal care and his mother will tell him to shower.   He does not need reminders to take

18   his medications.   Plaintiff prepares sandwiches and frozen dinners daily.   He takes out the trash

19   weekly and rakes their small yard.   He needs a reminder to do these things.   (AR 294.)

20           Plaintiff spends most of his time outside unless he is sleepy.   When he travels, he rides in

21   a car and does not go out alone because he is afraid to be by himself.   He does not drive.   Plaintiff

22   shops for groceries in the store three to four times per week.   He is able to pay bills and count

23   change, but not able to handle a savings account or checkbook because it is a headache.   (AR

24   295.)   Plaintiff's hobby is watching television and he does it every day.   He visits family two

25   times per week.   He goes to church once a week and attends two counseling meetings a week.   He

26   does not need anyone to accompany him.   (AR 296.)   Plaintiff does not have any problems getting

27   along with others but does not like to be around a crowd.   His conditions affect his ability to lift,

28   squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, his memory, completing tasks,

concentration, and understanding.  The reason is because he has gained a lot of weight, has back problems, and scoliosis.  He cannot pay attention for very long.  He is able to finish what he starts and follows written and spoken instructions pretty well.  (AR 297.)  Plaintiff does not like change. (AR 298.)

### b.   December 18, 2020 Adult Function Report

Plaintiff completed an adult function report that is recorded in the record as dated December 18, 2020.  (AR 322-28.)  Plaintiff stated that he was placed in Atascadero State Hospital for approximately one year.  His mental ability is limited to approximately five minutes, to focus on any given task and he is not able to sit for more than approximately five minutes.  (AR 322.)  From the time Plaintiff wakes up until he goes to bed, he relaxes, walks around outside, and watches television.  Plaintiff is restless, cannot sleep and is anxious at times.  He cannot focus enough to get his own clothes, he forgets to bathe, does not comb his hair or forgets, and does not bother to shave.  He is able to feed himself.  (AR 323.)

Plaintiff goes outside four to five times per day.  He travels by riding in a car and can go out alone.  He does not drive.  Plaintiff shops in stores for food four to five times a month.  He is able to pay bills and count change with help from his mother.  He does not handle a savings account or use a checkbook.  (AR 324.)  His hobby is hanging out with his brother and listening to music.  He does this daily if his brother is not working.  He spends time visiting with other people in person and on the phone, this is rarely due to the coronavirus.  Plaintiff needs to be reminded to go places and someone needs to go with him.  He does not have any problems getting along with others.  (AR 325.)

Plaintiff's conditions affect his ability to talk, hear, his memory, completing tasks, concentration, understanding, following instructions, and using his hands.  He cannot focus, his mind wanders, and he is forgetful.  He can pay attention for five to ten minutes.  He does finish what he starts.  He does not follow written or spoken instructions well.  He "gets into it" with authority figures.  (AR 326.)  He does not handle stress or changes in his routine well.  He has not noticed nay unusual behaviors or fears.  (AR 327.)

///

### c.       <u>November 10, 2021 Hearing Testimony</u>

Plaintiff testified at a hearing on November 10, 2021.  (AR 46-57.)  Plaintiff was not working and had just had surgery.  (AR 46.)  Plaintiff is unable to work because he has been on medication since 2014, cannot fully extend his arm and is mentally disabled.  He just recently got on medication because he had not refiled for Social Security once he turned eighteen.  He does not have the attention span to work, and his mental illness prevents him from working.  (AR 47.)  Plaintiff has been diagnosed with schizophrenia spectrum disorder, anxiety disorder, and asthma, and is status-post elbow fracture and recently had surgery for a kidney mass that was cancerous. (AR 47-8.)

Plaintiff was first diagnosed with schizophrenia spectrum disorder in 2014.  He went through mental health programs and was referred to take medication.  Plaintiff was in a mental hospital for a year.  He was supposed to be released from prison, but he went to the hospital program because it was felt he needed further mental health treatment to be able to make it once he was released from prison.  (AR 49.)  Plaintiff got caught up in the programs offered at prison and ended up needing mental health treatment.  He went in 2012 and first put in a request for treatment but he did not go and did not start taking medication until 2014.  (AR 50.)

Plaintiff is taking his medications as prescribed.  The medications are helping, they help him stay out of trouble and help him stay more focused than he was.  He hears voices and, every once in a while, he will see things.  The voices tell him things about his family and that he must let them go.  They tell him negative things and it frustrates him.  (AR 50.)  He will occasionally see pictures of the past, like remembering seeing his father who passed away.  (AR 50-1.)  It has been a while since he has seen things.  (AR 51.)

Plaintiff broke his arm when he was thirteen and they put screws in it.  Then when he was fourteen, he broke the screws and had a second surgery to put new screws in.  He cannot fully extend his arm.  Due to his arm, he cannot pick things up or hold things for long periods of time. (AR 51.)  Plaintiff is able to bathe himself and get dressed, but his mom reminds him.  He does not know how to cook.  They either eat out or his mom cooks for them.  Plaintiff is able to make a sandwich.  He does not have any limitations in getting along with people.  (AR 52.)

Plaintiff has a hard time concentrating, after months he is still taking medication and is worried about the next time he will hear a voice.  It makes him edgy.  Plaintiff has difficulty dealing with stress during a normal day.  (AR 52.)  He does not have a good memory; he just remembers things in his past.  He has memories of growing up with his dad, getting married and splitting up, and then moving back in with his dad, but not other things.  Plaintiff needs reminders to take his medication and his mom has a weekly pill container and sets his medication out.  (AR 53.)

Plaintiff does not do grocery shopping, his mother does that for them.  He will go pick out some things but does not go by himself.  He would not know what to get.  (AR 54.)  He would need his aunt or someone to help him.  (AR 54-5.)

He does not have any side affects from his medication.  Plaintiff lays for a few hours and then will get up and lay back down and watches television most of the day.  Plaintiff has not driven for over twenty years.  (AR 55.)

3.    ALJ's Findings Regarding Plaintiff's Mental Symptom Allegations

In discussing the severity of Plaintiff's mental limitations, the ALJ stated that, in the December 18, 2020 function report, Plaintiff alleges difficulty understanding and following directions.  (AR 24, 326.)  However, the ALJ found that evidence of record does not support the extent of his allegations noting that at the psychological consultive examination, Plaintiff displayed intact memory.  (AR 24.)  On August 12, 2020, Dr. Stafford conducted a mental evaluation.  (AR 465-469.)  Dr. Stafford found that Plaintiff's concentration, persistence, and pace were within normal limits.  (AR 467.)  Examination notes that his memory is intact.  (AR 24, 467.)  Plaintiff was able to recall detailed autobiographical and historical information.  He was able to describe specific activities prior to the examination and was able to state his address.  (AR 467.)  Plaintiff was able to remember three of three items immediately and three of three items in three minutes.  He was able to repeat four digits forward and three digits backwards.  (AR 25, 468.)  Dr. Stafford found that Plaintiff's ability to perform simple and repetitive tasks was unimpaired.  (AR 469.)  The ALJ also considered that records from Plaintiff's treating providers denote a normal memory and coherent goal directed thought process.  (AR 25, 592-615, 705.)

The ALJ also noted that at the consultative examination, Plaintiff stated that he has difficulty controlling his anger, but the evidence of record does not support the extent of the allegation.  (AR 25, 466.)  On examination, Plaintiff displayed polite cooperate behavior as well as normal eye contact.  (AR 25, 468.)  The ALJ also noted that Plaintiff reported in his function reports that he has no problems getting along with others, including family, friends, neighbors and authority figures.  (AR 25, 297, 325.)  He also reported that he hangs out with his brother every day and visits with others in person and by phone.  (AR 25, 325.)  He shops in stores.  (AR 25, 295, 324.)

The ALJ also considered that in his function report he stated that he can only pay attention for five to ten minutes, but the record does not support the extent of the allegations.  (AR 25, 326.) The ALJ noted that the psychological consultative examination was notable for the report of paranoid delusions, the inability to complete serial threes, and the inability to spell WORLD backwards. But Plaintiff was able to calculate that seven quarters equaled $1.75, could spell WORLD forwards, and was able to follow a three-step command.  (AR 25, 468.)  Plaintiff's hobbies including watching movies and going for walks in the park.  (AR 25, 467.)

The ALJ considered that Plaintiff has been diagnosed with schizophrenia spectrum disorder and anxiety disorder.  (AR 27, 469.)  He also considered that Plaintiff complained of psychological symptoms including anxiety, panic attacks, hallucinations, delusions, paranoia, sleep disturbance, irritability, and mood swings.   (AR 27, 465-66.)  The ALJ found that the extent of Plaintiff's psychological allegations is not supported by the findings on mental status examination or the nature of his treatment; and mental status examination does not fully corroborate his allegations. (AR 27.)  The ALJ noted that mental status examination at a psychological consultative examination was notable for the report of paranoid delusions, the inability to complete serial 3s, and the inability to spell WORLD backwards.   However, findings were otherwise generally intact, including cooperative and polite behavior, normal eye contact, intact memory, normal fund of knowledge, and the ability to follow a 3-step command.  (AR 27, 468.)  The ALJ also considered that treating providers recorded intact mental status examination findings including normal memory, normal fund of knowledge, and a coherent and goal directed thought process.  (AR 27, 455, 478, 504, 592, 593, 594, 595, 596, 597, 598, 599, 599-600, 600-01, 601, 602, 603, 604, 605, 605-06, 606-07, 607,

608, 609, 610, 611, 612, 613, 613-14, 614, 615, 616, 617, 619, 705.)   The ALJ also found that Plaintiff's mental health treatment has been conservative and limited during the period at issue. (AR 27.)   Plaintiff has a past criminal history, (AR 407, 467), and after being found incompetent to stand trial, he was placed in a state mental hospital from November 2018 to October 2019.   (AR 27, 407, 489.)   The ALJ considered that this occurred prior to his November 2019 protected filing date, and since discharge, Plaintiff has been receiving court ordered counseling.  (AR 27, 592-619.) Plaintiff's mental health medications are managed by his primary care physician.  (AR 27, 446-57, 497-589.)   The ALJ found that Plaintiff is on parole and appears compliant with medications and counseling. (AR 27, 446-57, 476-90, 497-589, 590-620.)  There have been no decompensations or inpatient admissions since his October 2019 release from the state mental hospital; and counseling records suggest Plaintiff is doing well.  (AR 27, 590-620.)  Overall, the ALJ found that Plaintiff's treatment records are generally consistent with his medically determinable impairments.  However, they are not consistent with Plaintiff's subjective reports of disabling symptoms and suggest that his symptoms are not as severe as he alleged.  (AR 27.)

4.    Analysis

For the reasons discussed below, the Court finds that the ALJ provided clear and convincing reasons to reject Plaintiff's testimony regarding the severity of his symptoms.

**a. Conservative treatment**

Plaintiff first argues that the ALJ misrepresented that Plaintiff's treatment was conservative because he was treated with increasing dosages of antipsychotic medication, was hospitalized for a year prior to the period at issue, and failed to explain what more aggressive or nonconservative treatment was available or not followed.   Here, the ALJ found that Plaintiff's mental health treatment had been conservative and limited since he was released from the state mental hospital, he appears to be compliant with his medication, there are no documented episodes of deterioration that required hospitalization, and counseling records suggest he is doing well.   (AR 26, 28.) Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

Plaintiff points to the following records to support a mischaracterization of his treatment as

conservative.  On November 11, 2018, Plaintiff was seen complaining that his Remeron was not helping his anxiety and insomnia.  He had learned that morning that he had been qualified as an "MDO" and he was upset.  He noted that the Thorazine helps him when he feels restless and denied side effects from his medications.  Plaintiff was noted to be alert, oriented, tense, and cooperative with fair hygiene.  He had good eye contact, and normal speech and language.  His affect was congruent.  He was anxious.  Thought processes were goal directed and he endorsed non-intrusive auditory hallucinations.  Cognitive functioning was grossly intact, and he had fair insight and judgment. (AR 368.)  Plaintiff's medications were continued, and he was to discuss his medications with his next psychiatrist.  (AR 369.)

Plaintiff's discharge summary from prison, dated October 23, 2019, notes:

> Mr. Rummerfield during his prior admission was noted to have a history of engaging in conduct disordered behavior prior to the age of 15.  He began using drugs as a teenager and was convicted of grand theft auto while under the age of 15.  He has multiple arrests demonstrating a pattern of disregard for and violation of the rights of others and social norms.  He has demonstrated a reckless disregard for his own safety and the safety of others through his assaults on others.  He has demonstrated irritability and aggressiveness.  He has demonstrated a lack of remorse for some of his offenses.  He appears to meet the criteria for the diagnosis of Antisocial Personality Disorder as well.
> . . .
> He needs. to be followed up very carefully for his psychiatric diagnosis and his medications that he takes. . .. Lifelong psychiatric and medical care is recommended for this patient.  He needs to be followed up very closely.

(AR 418.)   Plaintiff's medications are listed as: Cetirizine hydrochloride, 10 mg daily; Chlorpromazine, 200 mg at night; Docusate sodium 250 mg at night; Omega-3 fatty acids/fish oil, 1 capsule every day for dyslipidemia; and Risperidone 4 mg by mouth twice a day.  (AR 418.)  Plaintiff was discharged to parole.  (AR 420.)

Plaintiff also references a December 9, 2019 office visit in which he complained that he had been unable to sleep and was requesting a sleep aid.  (AR 569.)   Plaintiff was to begin taking Trazodone, 150 mg daily and to increase to 300 mg.  (AR 572.)

Plaintiff cites to a January 13, 2020 office visit where he requested to speak to Dr. Chopra due to possible side effects from his medication.  (AR 564.)   Plaintiff was taking Cetirizine hydrochloride, 10 mg daily; Risperidone 4 mg by mouth twice a day; and Trazodone, 300 mg daily.  (AR 565.)  On examination, Plaintiff was noted to have normal memory.  He was oriented to time,

place, person, and affect.  Mood and affect were appropriate, and insight and judgment were normal.  (AR 566.)  His mother reported he was having a clicking sound from the Thorazine, and it was agreed to stop the medication.  (AR 567.)  Plaintiff was to advise how he was doing without the medication and to return it there were any issues.  (AR 567.)

Plaintiff next points to a May 5, 2020, office visit.  On this date, Plaintiff was seen complaining of insomnia and allergies.  (AR 543.)  Plaintiff requested a refill of his medication and reported no side effects.  His medications were to continue as directed.  The record shows that he was taking Cetirizine hydrochloride, 10 mg daily; Risperidone 4 mg by mouth twice a day; and Trazodone, 300 mg daily.  (AR 545.)

While Plaintiff argues that the medication, he was taking cannot be considered conservative treatment, the ALJ noted that Plaintiff was stable on his medications and there had been no decompensation or inpatient admissions since his October 2019 release from the state mental hospital.  (AR 27.)  Plaintiff's allegations that he was requiring increasing medication to address his psychiatric issues is not supported by the record.  The record shows no increase in the psychiatric medications that he was taking upon release from the psychiatric hospital.  While Plaintiff was placed on Thorazine to address his issues with sleeplessness in December 2019, it was discontinued in January 2020 due to a side effect of clicking noise.

The ALJ could reasonably find that Plaintiff's treatment following release from the psychiatric hospital was conservative and limited, he had not required any further inpatient admissions, and the psychiatric treatment notes indicated that he was stable and doing well, which did not support his allegations of the severity of his symptoms.

Plaintiff also argues that the ALJ erred by failing to address side effects from his medications.  Plaintiff notes that on an October 30, 2019 visit with Dr. Chopra, his mother stated that he seems different and out of it.  Plaintiff also had dizziness, nausea, vomiting and diarrhea that had begun two days prior.  (AR 450.)  His mother felt his medication was too strong and that he was being overmedicated.  Plaintiff's medication was adjusted by half.  (AR 451.)  Plaintiff argues that the ALJ erred by failing to address that his medication made him feel out of it and unable to complete work activity, but the ALJ did address Plaintiff's allegations that he had difficulty

1    concentrating and could only concentrate for five to ten minutes.  (AR 25.)

2        Plaintiff points to no further records that demonstrate he continued to have any side effects,

3    other than the clicking sound with Thorazine (AR 567) that was discontinued the month after it was

4    started as discussed above.  (AR 545.)  Further a review of the medical records during the relevant

5    time period following his release from the mental hospital show numerous notations that Plaintiff

6    is doing well or reported that he was doing well and stable on his medication, with no side effects

7    reported.  (AR 448, 478, 479, 480, 481-82, 482, 483, 484, 485, 486, 499, 510, 536, 545, 576, 592,

8    593, 594, 595, 596, 597, 598, 599, 599-600, 600-01, 601, 602, 603, 604, 605, 605-06, 606-07, 607,

9    608, 609, 610, 611, 612, 613, 613-14, 614, 615, 616, 617, 619.)  Finally, at the November 10, 2021

10   hearing, Plaintiff reported that he had no side effects from his medication.  (AR 55.)  The Court

11   finds no error in the ALJ's failure to address side effects from his medications in considering

12   Plaintiff's symptom complaints.

13       The ALJ ultimately found that Plaintiff's "statements and medical records indicate

14   inconsistencies with respect to the severity of his limitations, which weakens the persuasiveness of

15   his allegations."   "Counseling notes indicate the claimant's mental health has been stable since

16   release from the state mental hospital in October 2019.  Moreover, despite the complaints of

17   allegedly disabling symptoms, the claimant's treatment for both physical and mental impairment

18   has been limited and conservative."  (AR 32.)  The ALJ's finding that Plaintiff received

19   conservative and limited treatment and did not decompensate or require inpatient hospitalization

20   following his release from the state mental hospital is a clear and convincing reason to reject

21   Plaintiff's symptom testimony.

22       **b.    Inconsistency with the medical record**

23       Plaintiff argues that the ALJ erred by failing to address the findings in the medical record

24   prior to the alleged disability period which support his symptom testimony.  While Plaintiff relies

25   heavily on the medical record prior to 2019 to argue that the ALJ mischaracterized the record, the

26   ALJ did consider that Plaintiff had a criminal record, after being found to be incompetent to stand

27   trial he was placed in a state mental hospital from November 2018 to October 2019, which was

28   prior to the November 2019 protected filing date.  (AR 25, 26, 28.)  The ALJ noted that since his

discharge from the state mental hospital, he has been receiving court ordered counseling, and his mental health medication is being managed by his primary care physician.  (AR 28.)  Plaintiff argues the medical record prior to Plaintiff's release to demonstrate that Plaintiff's symptoms are more severe and would preclude work, however, the question is not whether there is evidence to support Plaintiff's symptom testimony, but whether the ALJ's findings are supported by substantial evidence.  Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[t]hus the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.")

Specifically, the ALJ noted that Plaintiff stated in his function report that he had difficulty understanding and following directions (AR 24, 326), but the ALJ noted that at the psychological examination Plaintiff's memory was intact, he was able to remember three of three items immediately, three of three items after three minutes, could repeat four digits forward and three digits backwards, and he was able to perform a three-step command (AR 24, 467-68).  Further, the ALJ noted that the records of his treating providers denote normal memory and a coherent and goal directed thought process.  (AR 24.)  The ALJ noted Plaintiff's mental health provider records from October 28, 2019 to October 5, 2021.  (AR 592, 593, 594, 595, 596, 597, 598, 599, 599-600, 600-01, 601, 602, 603, 604, 605, 605-06, 606-07, 607, 608, 609, 610, 611, 612, 613, 613-14, 614, 615, 616, 617, 619.)

On October 28, 2019, the record notes that Plaintiff was released from the hospital with a thirty-day supply of his medication.  (AR 619.)  He presented with a euthymic mood and flat affect.  Speech was sparce and quiet.  He was alert and oriented times four.  Thought processes were organized and hygiene was fair.  Eye contact was appropriate and there were no suicidal or homicidal ideation, visual or auditory hallucinations.  (AR 619.)

Plaintiff was seen again on January 29, 2020 for a telemed visit.  He had fair eye contact and was cooperative and polite with fair hygiene.  There were no abnormal involuntary movements.  Speech was clear and coherent.  Mood is noted as "done."  His affect was constricted and thought processes were linear and organized.  There was no suicidal or homicidal ideation.  Plaintiff exhibited no hypo/mania and no psychosis.  Judgment was good and insight was fair.  Plaintiff was

alert and oriented times three.  Abstraction was average.  (AR 619.)

The ALJ noted a January 30, 2020, visit with Dr. Chopra.  Plaintiff was seen with questions about his medication, his mother stated that he seemed out of it and thought he was overmedicated.  (AR 564, 567.)  Examination notes a normal memory.  Plaintiff is oriented to time, place, person, and situation.  He had appropriate mood and affect, and insight and judgment were normal.  (AR 566.)

Plaintiff was seen by his mental health provider on June 9, 2020, and June 23, 2020.  (AR 616, 617.)  He stated he was doing well and had been taking his medication daily as prescribed.  He reported his mood was stable, aspect was varied in range.  Fund of information was good; speech was coherent, and goal directed.  He reported his sleep, appetite, and energy were unremarkable.  Insight was good and he was noted to be a good problem solver.  He denied suicidal or homicidal ideation, auditory or visual hallucinations.  (AR 616, 617.)

Plaintiff was seen on July 6, 2020; July 21, 2020; August 28, 2020; September 11, 2020; September 25, 2020; October 10, 2020; November 5, 2020; November 19, 2020; December 10, 2020; December 31, 2020; January 15, 2021; February 3, 2021; February 18, 2021; March 3, 2021; March 18, 2021; April 2, 2021; May 5, 2021; May 20, 2021; June 4, 2021; June 18, 2021; July 2, 2021; July 16, 2021; August 3, 2021; August 30, 2021; September 14, 2021; October 5, 2021; he continued to state he was doing well.  Examination remained the same, except it is noted that he was very upbeat and much more talkative.  (AR 592, 593, 594, 595, 596, 597, 597-98, 598-99, 599-600, 600-01, 601, 602, 603, 603-04, 604-05, 605-06, 606, 607, 607, 608 (dupl. of 478), 609, 609-10, 610-11, 611-12, 612-13, 613-14, 614, 615.)

The ALJ also noted a November 3, 2020, visit with Dr. Chopra for a well adult physical.  (AR 501.)  Examination notes a normal memory.  Plaintiff is oriented to time, place, person, and situation.  He had appropriate mood and affect, and insight and judgment were normal.  (AR 504.)

The ALJ further considered that Plaintiff reported in his function report that he can only pay attention for five to ten minutes, but at the consultative examination, he was able to calculate that seven quarters equaled $1.75, could spell WORLD forwards, and was able to follow a three-step command.  (AR 25, 468.)

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999).  The ALJ properly considered this evidence in weighing Plaintiff's credibility.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ's finding that Plaintiff's symptom testimony was inconsistent with the medical evidence is supported by substantial evidence.  Inconsistency with the medical record is a clear and convincing reason to discount Plaintiff's symptom testimony.  Rollins, 261 F.3d at 857.

### c.   Daily Activities

The ALJ also found that Plaintiff's symptom testimony was inconsistent with his daily activities.  There are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills."  Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014).

Here the ALJ found that Plaintiff's symptom allegations were inconsistent with his daily activities.  "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability."  Orn, 495 F.3d at 639 (citing Vertigan, 260 F.3d at 1050).  In addressing the claimant's testimony, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). "Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."  Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  "To support a lack of

credibility finding, the ALJ was required to point to specific facts in the record that would support the lack of credibility finding. Burrell, 775 F.3d at 1138.

In considering that Plaintiff alleged he was only able to pay attention for five to ten minutes, the ALJ found it inconsistent that Plaintiff's hobbies included watching movies. (AR 25, 467.) The ALJ could reasonably find that watching movies was inconsistent with Plaintiff's allegation that he could only pay attention for five to ten minutes.

Further, the ALJ noted that Plaintiff alleged difficulty controlling his anger. (AR 25.) At the consultative examination, Plaintiff stated that his mother says he has problems controlling his anger and has mood swings. When he gets angry, he will sometimes throw things. (AR 466.) The ALJ found that the evidence of record does not support the extent of the allegation. (AR 25.) At the consultative examination, Plaintiff displayed cooperative and polite behavior as well as normal eye contact. (AR 25, 468.) In his function report, Plaintiff stated he has no problems getting along with others, including family, friends, neighbors, and authority figures. (AR 25, 297, 325.) Plaintiff hangs out with his brother every day and visits with others in person and via telephone. (AR 25, 325.) He shops in stores for food. (B9E). (AR 25, 324.) The ALJ could reasonably find that Plaintiff's social interactions contradict his allegations regarding the severity of his anger issue.

The Court finds that the ALJ's findings that his daily activities contradict Plaintiff's allegations regarding the severity of his mental symptoms is a clear and convincing reason to reject Plaintiff's symptom testimony.

The ALJ provided clear and convincing reasons to reject Plaintiff's testimony regarding the severity of his mental symptoms and Plaintiff's motion for summary judgment on this ground shall be denied.

**B.** **Whether the mental RFC is supported by substantial evidence**

Plaintiff argues that the mental RFC is not supported by substantial evidence in the record because the ALJ rejected all medical opinions in the record. (Mot. 20.) Plaintiff contends that the ALJ took it upon herself to craft the mental RFC based on the same findings discussed above that his treatment was conservative, examination findings were generally normal, and he was stable following his release from the state mental hospital, and his activities of daily living. (Mot. 20-1.)

Plaintiff asserts that these findings are not supported by the record as whole and therefore substantial evidence does not support the RFC.  Plaintiff states that the reasons the ALJ provided to reject the various opinions are vague, redundant and nonspecific, and even use the same language without discussing which specific portions of the opinion she is rejecting and the reason why.  (Mot. 21.)

Plaintiff contends that the ALJ did not discuss the severity of his symptoms that are consistent with the medical record and his previous hospitalization, the opinion of his treating physician that he is permanently mentally incapacitated from performing any work.  Further, Plaintiff asserts that there is no discussion as to how the findings cited in the opinion render him able to perform work activity for eight hours a day on a consistent basis.  (Mot. 22.)  Plaintiff asserts that his ability to engage in very limited, basic functioning is tenuous at best, as it is dependent on his mother or brother accompanying him anywhere, including to doctor appointments, reminding him to take medications or to perform chores.  Plaintiff asserts that he is only be able to function under a structured setting provided either by his family who supervises his activities or a psychiatric hospital.  (Mot. 23.)

Defendant counters that the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's RFC findings.  Defendant contends that the ALJ's translation of the evidence of record to the mental RFC is reasonable and the rationale for such is evident from the decision and record as a whole.  Defendant asserts that the ALJ considered the objective medical evidence, such as the generally consistent normal findings on mental examination, Plaintiff's conservative and effective treatment, and his daily activities.  Defendant argues that although the ALJ did not find any specific opinion persuasive, they are supportive of the ultimate RFC findings.  Defendant states that the evidence reasonably supports the RFC findings.  (Opp. 25.)  Defendant argues that Plaintiff's assertion that the ALJ did not adequately explain the rationale for the RFC finding is baseless.  Defendant contends that Plaintiff is requesting for the Court to reweigh the evidence which is improper under the substantial evidence standard.  Finally, Defendant points out that the ALJ did address Plaintiff's physician's opinion that he was permanently mentally incapacitated for any type of work and pointed out that this was a decision reserved for the

1   commissioner.  (Opp. 26.)

2          1.      Relevant Legal Standards

3          **a.      Step four**

4          A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20

5   C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20

6   C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, §

7   416.920(b) and (c), as well as the total limiting effects caused by medically determinable

8   impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison, 759 F.3d

9   at 1011.  At step four the RFC is used to determine if a claimant can do past relevant work and at

10  step five to determine if a claimant can adjust to other work.  Garrison, 759 F.3d at 1011.  "In

11  order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all

12  of the claimant's functional limitations, both physical and mental' supported by the record."

13  Thomas, 278 F.3d at 956.

14         **b.      Weighing Medical Opinions and Prior Administrative Medical Findings**

15         Where, as here, a claim is filed after March 27, 2017, the revised Social Security

16  Administration regulations apply to the ALJ's consideration of the medical evidence.  See

17  Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg.

18  5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated

19  regulations, the agency "will not defer or give any specific evidentiary weight, including

20  controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

21  those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).

22  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when

23  considering medical opinions, and no longer mandate particularized procedures that the ALJ must

24  follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is

25  not required to articulate how [he] considered each medical opinion or prior administrative

26  medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675

27  (9th Cir. 2017).

28         "When a medical source provides one or more medical opinions or prior administrative

medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

2.   Medical opinions and prior administrative findings

The ALJ considered the following medical opinions and prior administrative findings in determining Plaintiff's mental RFC.

///

1

2

      **a.**      **Treating physician's opinion that Plaintiff was permanently mentally incapacitated from all work activity**

3    Plaintiff alleges that there is no discussion of his treating providers opinion that he is

4    permanently mentally incapacitated from any type of work.  (Mot. 22.)  However, as Defendant

5    points out the ALJ did discuss this opinion.

6

7

8

9

10

11

12

13

> The undersigned considered an opinion in Exhibit B3F rendered by a provider with an illegible signature.  (B3F.)  The provider opined the claimant is permanently mentally incapacitated.  (B3F.)  The undersigned does not find the opinion persuasive.  The opinion is not consistent with mental status examination fin[d]ings.  Mental status examination at a psychological consultative examination was notable for the report of paranoid delusions, the inability to complete serial 3s, and the inability to spell WORLD backwards.  (B6F.)  Findings were otherwise generally intact, including cooperative and polite behavior, normal eye contact, intact memory, normal fund of knowledge, and the ability to follow a 3 step command.  (B6F.)  The claimant's treating providers recorded intact mental status examination findings including normal memory, normal fund of knowledge, and a coherent and goal directed thought process.  (<u>See</u> <u>e.g.</u>, B4F/10; B7F/7; B8F/11; B9F; B13F/38).  Furthermore, 20 CFR 416.927(d) provides in pertinent part that the final responsibility for deciding issues such as whether or not a claimant is disabled is reserved to the Commissioner.

14    (AR 30-1.)

15    The report at issue, is a General Assistance Employability Examination Report, dated

16    November 20, 2019, which states that Plaintiff is permanently mentally incapacitated.  His

17    diagnosis is schizophrenia, hyperlipidemia, and allergic rhinitis.  (AR 445.)  The ALJ reasonably

18    found that the opinion was inconsistent with the medial record showing that Plaintiff had generally

19    normal mental examinations, the consultative examination demonstrating normal findings and an

20    ability to follow a three-step command, and his condition was stable following his release from the

21    state mental hospital.

22    While the ALJ must consider all medical evidence, "[t]he treating physician's opinion is

23    not" "necessarily conclusive as to either physical condition or the ultimate issue of disability."

24    <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).  But the ALJ may not simply reject the

25    treating physician's opinion on the ultimate issue of disability.  <u>Ghanim</u>, 763 F.3d at 1161.

26    Here, the ALJ considered the opinion from Plaintiff's treating physician but did not accept

27    his ultimate conclusion that Plaintiff was permanently incapacitated from any type of work.  Under

28    the regulations, a medical opinion is a statement from an acceptable medical source that reflects

judgment about the nature and severity of the claimant's impairments.  20 C.F.R. § 404.1527(a)(1).  Opinions on some issues are not medical opinions but are opinions on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(a)(1).  One such issue is that the claimant is "disabled" or "unable to work."  20 C.F.R. § 404.1527(d)(1).  The ALJ does not give any special significance to opinions on issues that are reserved for the Commissioner.  20 C.F.R. § 404.1527(d)(3).  The ALJ properly considered the opinion was inconsistent with the medical evidence and that the ultimate issue of disability was reserved for the Commissioner, the Court finds that the ALJ did not err in rejecting the opinion that Plaintiff was permanently incapacitated.

### b.    Prior Administrative Findings

The ALJ considered the prior administrative findings from the state agency medical consultants.  She asserted that the psychological consultants' findings deserve consideration as these doctors have a high level of understanding of the Social Security disability program and enjoy a review of all the available evidence in the record when forming their conclusions.  (AR 30.)

On August 28, 2020, Dr. Jacobs concluded on the initial review that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures or ability to understand and remember very short and simple instructions; and he was moderately limited in his ability to understand and remember detailed instructions.  Plaintiff was capable of performing simple tasks.  (AR 78.)

Plaintiff was not significantly limited in his ability to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them, and to make simple work-related decisions.  (AR 78-9.)  Plaintiff was moderately limited in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Plaintiff retains the capacity to sustain concentration, persistence, and pace for simple tasks.  (AR 79.)

Plaintiff was not significantly limited in his ability to be aware of normal hazards and take

appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others.  He was moderately limited in his ability to respond appropriately to changes in the work setting.  Plaintiff maintains the ability to adapt to infrequent changes.  (AR 79.)

On February 21, 2021, Dr. Stern issued an opinion on Plaintiff's mental residual capacity on reconsideration.  Dr. Stern found that Plaintiff retained the capacity to perform simple tasks. (AR 100-01.)   He can sustain concentration, persistence, and pace to perform simple tasks.  (AR 102.)  Dr. Stern also found that Plaintiff was not significantly limited in his ability to ask simple questions or request assistance, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  He was moderately limited in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (AR 102-03.)  Plaintiff requires limited contact.  Plaintiff retains the capacity to adapt to infrequent changes.  (AR 103.)  Plaintiff is capable of performing the basic mental demands of unskilled work-like activity with limited peer and public contact.  (AR 103-04.)

The ALJ did not find the conclusions persuasive because they are not supported by the examiners' analysis of records reviewed, and they are not consistent with records submitted after they reviewed the file.  (AR 30.)  The ALJ found that mental status examination at a psychological consultative examination was notable for the report of paranoid delusions, the inability to complete serial 3s, and the inability to spell WORLD backwards.  (AR 30, 468.)  Otherwise, findings were generally intact, including cooperative and polite behavior, normal eye contact, intact memory, normal fund of knowledge, and the ability to follow a 3 step command. (AR 30, 468.)  Plaintiff's treating providers recorded intact mental status examination findings including normal memory, normal fund of knowledge, and a coherent and goal directed thought process. (AR 30, 455, 468-69, 478, 504, 592, 593, 594, 595, 596, 597, 598, 599, 599-600, 600-01, 601, 602, 603, 604, 605, 605-06, 606-07, 607, 608, 609, 610, 611, 612, 613, 613-14, 614, 615, 616, 617, 619, 705.)  Further, the ALJ considered that Plaintiff's mental health treatment has been conservative and limited during the period at issue.  (AR 30.)  Plaintiff was in a state mental hospital from November 2018 to

October 2019, which occurred prior to his November 2019 protected filing date.  Since discharge, Plaintiff has been receiving court ordered counseling.  (AR 30, 476-90.)  He appears compliant with medications/counseling.   (AR 30, 446-57, 476-90, 497-589, 590-620).  There have been no decompensations or inpatient admissions since his October 2019 release from the state mental hospital and counseling records suggest Plaintiff is doing well.  (AR 30, 476-90.)

### c.     Consultative Examination

The ALJ also considered the opinion of Dr. Stafford who conducted a consultative psychiatric examination on August 12, 2020.  (AR 30, 465-70.)  Dr. Stafford opined that Plaintiff had the capacity to manage supplemental funds.  His ability to perform simple and repetitive tasks was unimpaired.  His ability to perform detailed and complex tasks is moderately impaired due to avolition, requiring reminders to complete his activities of daily living, and auditory hallucinations. His ability to accept instructions from supervisors is mildly impaired.  Plaintiff ability to interact with co-workers, supervisors, and the public is moderately impaired due to paranoid delusions, auditory hallucinations, mood lability, low frustration tolerance, and history of poor insight and judgment.  His ability to perform activities on a consistent basis without special or additional instructions is mildly impaired.  (AR 469.)  Plaintiff's ability to maintain regular attendance in the workplace is moderately impaired due to a history of poor insight and judgment, low frustration tolerance, auditory hallucinations, and mood lability.  His ability to complete a normal workday without interruptions from a psychiatric condition is moderately impaired due to his symptoms of psychosis, low frustration tolerance, mood lability, history of poor insight and judgment, and limited coping skills.  His ability to deal with the usual stress encountered in the workplace is moderately impaired due to his paranoid delusions, auditory hallucinations, mood lability, symptoms of anxiety, limited coping skills, and history of poor insight and judgement.  (AR 470.)

The ALJ did not find the opinion persuasive.  The given limitations were found to be overly restrictive and not supported by Dr. Stafford's own mental status examination findings.  Mental status examination at the psychological consultative examination was notable for the report of paranoid delusions, the inability to complete serial 3s, and the inability to spell WORLD backwards. (AR 30, 468.)  But findings were otherwise generally intact, including cooperative and polite

behavior, normal eye contact, intact memory, normal fund of knowledge, and the ability to follow a 3-step command.  (AR 30, 468.)  Further, the ALJ found that the opinion was inconsistent with the conservative and limited mental health treatment; since discharge from the state mental hospital, Plaintiff has been receiving court ordered counseling; he appears compliant with medication and counseling; there have been no decompensations or inpatient admissions since his October 2019 release; and treatment records indicate he is doing well as discussed above.  (AR 30.)

　　　　3.　　Analysis

　　　　Plaintiff argues that the ALJ's three repeated verbatim references to the same citations fail to support any significant limitations.  However, the inference from the references that the ALJ cites are evident.  The ALJ found that the records following Plaintiff's release from the state mental hospital demonstrate generally normal mental findings and he is compliant and stable on his medication and with treatment.

　　　　Plaintiff also argues that the ALJ fails to acknowledge his continuing severe paranoia and hallucinations, without citation to any such findings during the relevant time period.  The record itself demonstrates that Plaintiff denied having auditory or visual hallucinations following his release from the state hospital.  (AR  592, 593, 594, 595, 596, 597, 598, 599, 599-600, 600-01, 601, 602, 603, 604, 605, 605-06, 606-07, 607, 608, 609, 610, 611, 612, 613, 613-14, 614, 615, 616, 617, 619.)  At the August 2020 consultative examination, Plaintiff stated it had been three years since he had seen spirits.  (AR 466.)  During the November 2021 hearing, Plaintiff stated that it had been a while since he had seen things.  (AR 51.)  Additionally, he testified that as the weeks and months go by, he is worried about when he will hear a voice and it makes him edgy.  (AR 53.)

　　　　Plaintiff further argues that the ALJ cherry picked findings that she found to be normal and cites the record prior to Plaintiff's release from the state mental hospital.  However, citations to findings during Plaintiff's hospitalization do not call into question the ALJ's finding that after his release Plaintiff's mental health findings are generally normal, he was stable, doing well, and compliant with medication and treatment.

　　　　Plaintiff does point to two findings following his release from the state mental hospital.  On October 28, 2019, the day of Plaintiff's release from the state mental hospital, his speech is noted

1  to be sparse and quiet.  (AR 619.)  However, there are no further such notations, and starting July

2  6, 2020, the record consistently notes that Plaintiff is much more talkative and very upbeat.  (AR

3  592, 593, 594, 595, 596, 597, 598, 599, 599-600, 600-01, 601, 602, 603, 604, 605, 605-06, 606-07,

4  607, 608, 609, 610, 611, 612, 613, 613-14, 614, 615.)

5      Plaintiff also states that he had insomnia on November 20, 2020.  Plaintiff was seen at the

6  appointment to receive test results from his physical on November 3, 2020.  The record merely

7  notes that Plaintiff was requesting a refill on his insomnia medication and reported no side effects.

8  (AR 499.)  Plaintiff has not demonstrated that the ALJ ignored significant objective evidence from

9  other medical and nonmedical sources in the record that are consistent with the medical opinion

10  rejected.  Thompson v. Comm'r of Soc. Sec., No. 2:20-CV-3-KJN, 2021 WL 1907488, at *6 (E.D.

11  Cal. May 12, 2021).

12      As to Plaintiff's mental RFC, the ALJ found that he was limited to simple, routine tasks not

13  at a production pace; occasional interactions with supervisors and co-workers; no interactions with

14  the general public; and occasional changes to a routine work setting.  (AR 26.)  In addressing the

15  mental RFC, the ALJ stated,

16      In particular, his mental impairments and associated symptoms, including anxiety,
       panic attacks, hallucinations, delusions, paranoia, sleep disturbance, irritability, and
17      mood swings, limit him to the following: simple, routine tasks not at a production
       pace; occasional interactions with supervisors and coworkers; no interactions with
18      the general public; and occasional changes to a routine work setting.

19  (AR 29.)

20      Plaintiff argues that the ALJ rejected all the opinions in the record and crafted the findings

21  that she found to be generally normal into the RFC.  It is not necessary for the ALJ "to agree with

22  everything an expert witness says in order to hold that his testimony contains 'substantial evidence."

23  Magallanes, 881 F.2d at 753 (citations omitted).  Here, the ALJ clearly accepted some of the

24  limitations opined in the medical opinions and prior administrative findings.  Plaintiff was limited

25  to simple, routine tasks which is consistent with the opinions of Dr. Jacobs, Dr. Stern, and Dr.

26  Stafford.  (AR 78, 79, 100-01, 102, 469.)  However, the ALJ included the additional limitation that

27  the work not be at a production pace.  The ALJ found that Plaintiff was limited to occasional

28  interactions with supervisors and co-workers and no interactions with the public.  This is consistent

1  with the opinions of Dr. Stern who opined that Plaintiff was capable of performing the basic

2  demands of unskilled work with limited peer and public contact and Dr. Stafford's opinion that

3  Plaintiff was moderately limited in his ability to interact with co-workers, supervisors, and the

4  public.  (AR 103-04, 469.)  The ALJ also found that Plaintiff was limited to occasional changes in

5  the work setting.  This is consistent with the opinions of Drs. Jacobs and Stern who opined that

6  Plaintiff maintained the ability to adapt to infrequent changes.  (AR 79, 103.)

7      Plaintiff argues that the ALJ failed to explain how the ALJ's findings demonstrate that he

8  is capable of functioning 8 hours a day 5 days per week.  However, the agency physicians opined

9  that Plaintiff retained the capacity to sustain concentration, persistence, and pace for simple tasks.

10  (AR 79, 102.)   Substantial evidence supports the mental RFC findings, and Plaintiff's motion for

11  summary judgment on this ground shall be denied.

12      **c.    Whether there is an apparent conflict with the DOT**

13      Lastly, Plaintiff argues that the ALJ harmfully erred by failing to identify and resolve an

14  apparent conflict between the DOT and VE testimony.  (Mot. 23-4.)  Plaintiff contends that the

15  limitation of 10 pounds of pushing and pulling occasionally with the upper extremity is inconsistent

16  with the jobs identified by the VE.  Plaintiff asserts that there was no discussion of the VE regarding

17  the pushing and pulling limitations and the jobs identified.  (Mot. 24.)  Plaintiff states that that the

18  ALJ harmfully erred by failing to ask the VE about the apparent conflict between the pulling and

19  pushing limitations with the upper right extremity and the jobs including Laundry Aide DOT

20  369.687-018; Mail Clerk, DOT 209.687-026 and Housekeeping Cleaner, DOT 323.687-014 all of

21  which require "frequent" reaching and handling per case law in this circuit.  (Mot. 25.)

22      Defendant counters that there is no apparent conflict between the RFC restricting Plaintiff

23  to occasional pushing and pulling a maximum of 10 pounds with the upper right extremity and the

24  jobs identified by the VE.  Defendant argues that a review of the descriptions of the jobs identified

25  does not raise any foreseeable possibility that the Plaintiff would be required to push and/or pull

26  any significant amount of weight with the upper right extremity without the option to rely on his

27  unrestricted left upper extremity which would be an unusual job requirement.  (Opp. 27.)  Further,

28  Defendant contends that Plaintiff was limited to a range of light work which restricted him to lifting,

carrying, pushing, or pulling no more than 20 pounds occasionally and 10 pounds frequently, with the ability to reach frequently in all directions with the right upper extremity and no restrictions to the upper left extremity.  Defendant asserts that, if Plaintiff needed to push and/or pull more than occasionally as part of the job, he could most likely rely more heavily on his unrestricted left upper extremity.  (Opp. 28.)

    1.   <u>Legal Standard</u>

As previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." <u>Zavalin v. Colvin</u>, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  That is, the ALJ must consider potential occupations the claimant may be able to perform, based on the claimant's RFC, age, education and work experience, and the information provided by the DOT and the VE.  <u>See id.</u> at 846; <u>Valentine</u>, 574 F.3d at 689; 20 C.F.R. § 416.920(g).

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p, <u>available</u> <u>at</u> 2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs.  Each occupation represents numerous jobs." <u>Id.</u>; <u>see</u> <u>also</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995) (noting the DOT is not comprehensive, that "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT," and holding "[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.") (citations omitted).  Information about a particular job's requirements may be available from a VE's experience in job placement or career counseling.  SSR 00-4p.  Thus, a VE may be able to provide more specific information about jobs or occupations than the DOT.  <u>Id.</u>; <u>see also</u> <u>Lounsbury</u>, 468 F.3d at 1114.  Accordingly, the ALJ may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999); <u>Lockwood v. Comm'r</u>

1  of Soc. Sec., 616 F.3d 1068, 1071 (9th Cir. 2010) (the ALJ can meet the agency's burden of

2  proving that other work exists in significant numbers by the testimony of a VE).

3       SSR 00-4p provides that where there is an apparent unresolved conflict between VE

4  evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must

5  elicit a reasonable explanation for the conflict before relying on the VE to support a determination

6  or decision about whether the claimant is disabled.  SSR 00-4p, at *2; see also Johnson, 60 F.3d

7  at 1435 (holding that, if the ALJ relies on a VE's testimony that contradicts the DOT, the record

8  must contain "persuasive evidence to support the deviation.").  "An example of a conflict between

9  the DOT and a VE's testimony is when the DOT's description of a job includes activities a

10 claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be

11 able to perform that job." Martinez v. Colvin, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4

12 (E.D. Cal. Sept. 8, 2015) (citations omitted).  The ALJ must inquire, on the record at the disability

13 hearing, as to whether or not there is such consistency.  SSR 00-4p, at *2; Massachi v. Astrue, 486

14 F.3d 1149, 1153–54 (9th Cir. 2007).

15      Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in

16 the record that precludes [it] from determining whether the ALJ's decision is supported by

17 substantial evidence."  Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot

18 determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved

19 occupational evidence).  Nevertheless, a failure to ask the VE whether her testimony conflicts

20 with the DOT may amount to harmless error if there is no conflict, or if the VE provides

21 "sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d

22 at 1154, n.19; see also Hann v. Colvin, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal.

23 Mar. 28, 2014).

24      2.   VE testimony

25      Kathleen Doehla, a VE, testified at the hearing.  (AR 57-59.)  The ALJ presented a

26 hypothetical of an individual of the same age and education as Plaintiff who can work at the light

27 exertional level, with the ability to frequently climb stairs and ramps; cannot climb ladders, ropes,

28 or scaffolds, can frequently stoop, kneel, and crouch, but cannot crawl; can frequently reach in all

directions with the upper right extremity and can occasionally push and pull a maximum of ten pounds with the upper right extremity; must avoid workplace hazards and moving machinery; must avoid no more than moderate exposure to heat, cold, and pulmonary irritants; is limited to simple, routine tasks not at a production pace; can have occasional interactions with supervisors and coworkers, but none with the general public; and can tolerate occasional changes to a routine work setting.  (AR 58.)  The VE opined that the individual could perform work as a housekeeping cleaner, DOT 323.687-014, SVP 2, light, with approximately 133,000 positions in the nation; laundry aide, DOT 369.687-018, SVP 2, light, with approximately 85,000 positions in the nation; and mail clerk, DOT 209.687-026, SVP 2, light, with approximately 47,000 positions in the nation.  (AR 58-9.)

The ALJ asked about time off task and absences that would be permitted by employers.  The VE opined that, based on professional experience as to that topics which are not addressed in the DOT, there could be no more than ten percent off task and no more than seven excused absences a year.  The ALJ asked if the VE's testimony was consistent with the DOT.  The VE opined that she believed it would be consistent, other than those areas that she stated were not addressed in the DOT.  (AR 59.)

3.   Analysis

Relying on the VE's testimony, the ALJ found that Plaintiff could perform work as a laundry aide, DOT 369.687-018, SVP 2, light, with approximately 85,000 positions in the nation; and mail clerk, DOT 209.687-026, SVP 2, light, with approximately 47,000 positions in the nation; and housekeeping cleaner, DOT 323.687-014, SVP 2, light, with approximately 133,000 positions in the nation.  The regulations define light work as follows.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

The DOT defines the positions identified by the ALJ as follows:

> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles. May be designated according to type of laundry folded as Shirt Folder (laundry & rel.) I; Wearing-Apparel Folder (laundry & rel.).

Folder, DOT 369.687-018, 1991 WL 673072 (1991).

> Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING-MACHINE OPERATOR (clerical) 208.685-014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING-MACHINE OPERATOR (clerical) 208.582-010]. May be designated according to type of mail handled as Mail Clerk, Bills (clerical).

Mail Clerk, DOT 209.687-026, 1991 WL 671813 (1991).

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

Cleaner, Housekeeping, DOT 323.687-014, 1991 WL 672783 (1991).

The position of house cleaner does present a clear conflict with Plaintiff's limitation of occasional pushing and pulling a maximum of 10 pounds with the right upper extremity as it requires moving furniture which is an apparent conflict the ten-pound pushing pulling limitation. See Zavalin, 778 F.3d at 846 (providing example of apparent conflict as "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle"). The ALJ erred by failing to resolve this apparent conflict.

However, the two remaining jobs descriptions do not reveal any apparent conflict with the DOT. While Plaintiff relies on the description of light work to argue that the jobs require either a

1   good deal of walking or standing, or when it involves sitting most of the time with some pushing

2   and pulling of arm or leg controls, there is no indication in the description of the positions to show

3   they would require sitting most of the time with some pushing or pulling of arm or leg controls.

4   The position of laundry folder may require the unloading of a tumbler which may raise a conflict

5   with the DOT but not an apparent conflict with the pushing/pulling limitations.

6       Even assuming that the ALJ erred by failing to identify a conflict with the positions of house

7   cleaner and laundry folder.  The Court finds the error to be harmless.  The ALJ also identified the

8   position of mail clerk.  A review of the position does not identify any essential job duties that would

9   require pushing or pulling in excess of Plaintiff's limitations.  The DOT description references the

10   position may use a machine to open letters, a postal meter, a mail sealing machine, or a machine to

11   address mail.  None of the machines listed would create an apparent conflict with Plaintiff's

12   limitation to no more than pushing or pulling of ten pounds with the right upper extremity.

13   Plaintiff's argument that the position may require pushing or pulling more than ten pounds with the

14   right arm and therefore conflicts with his limitations fails to establish an apparent conflict.

15       As stated above, at step five, the burden shifts to the Commissioner, who must then show

16   that there are a significant number of jobs in the national economy that the claimant can perform

17   given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury, 468

18   F.3d at 1114.  The Ninth Circuit has declined to adopt a "bright line" rule about the sufficiency of

19   job numbers and has found that a comparison to other cases is instructive.  Beltran v. Astrue, 700

20   F.3d 386, 389 (9th Cir. 2012).   In Gutierrez v. Commr of Soc. Sec., 740 F.3d 519 (9th Cir. 2014),

21   the Ninth Circuit considered what constitutes a region for the purposes of the regulations.  After

22   finding that the region could include the entire state, thee court then determined that 25,000

23   nationally was a close call but affirmed the ALJ's decision holding that 25,000 jobs nationally is a

24   significant number of jobs.  Gutierrez, 740 F.3d at 529.

25       The VE stated there were approximately 47,000 mail sorter positions in the nation.  (AR

26   59.)  The Court finds that the 47,000 jobs identified by the ALJ is above the 25,000 jobs which the

27   Ninth Circuit found to be a "significant number".  Accordingly, any error in finding that Plaintiff

28   can work as a house cleaner or laundry folder was harmless as a significant number of jobs still

1   exist in the national economy with the deletion of those job from the equation.

2       Accordingly, the Court finds that any error due to failing to resolve an apparent conflict in

3   the positions of house cleaner or laundry folder would be harmless.  Plaintiff's motion for summary

4   judgment shall be denied.

5                                            **V.**

6                              **CONCLUSION AND ORDER**

7       For the reasons stated, the Court denies Plaintiff's amended motion for summary judgment

8   and finds no harmful error warranting remand of this action.

9       Accordingly, IT IS HEREBY ORDERED that Plaintiff's amended motion for summary

10  judgment is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant

11  Commissioner of Social Security and against Plaintiff Jack Earl Rummerfield.  The Clerk of the

12  Court is directed to CLOSE this action.

13      IT IS FURTHER ORDERED that the Clerk of the Court shall administratively terminate

14  Plaintiff's motion for summary judgment (ECF No. 18) and Defendant's brief (ECF No. 22).

15

16  IT IS SO ORDERED.

17  Dated:   **March 27, 2024**

         UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28